## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH CAROLINA

## COLUMBIA DIVISION

| | |
|---|---|
| **Nicole Hunter, as Personal Representative for the Estate of Richard Hunter**<br><br>  **Plaintiff,**<br><br>v.<br><br>**The United States of America**<br><br>  **Defendant.** | C/A:   3:25-cv-6963-SAL<br><br>**COMPLAINT** |

Plaintiff, by and through her undersigned counsel, for a Complaint against the Defendant, alleges as follows:

### PARTIES and JURISDICTIONAL ALLEGATIONS

1. Plaintiff Nicole Hunter ("Plaintiff") is the duly appointed Personal Representative of the Estate of her father Richard Hunter ("Mr. Hunter"). Plaintiff brings this action as Personal Representative of the Estate for the Survival and Wrongful Death actions. At all times relevant to this Complaint, Mr. Hunter was a citizen and resident of Lexington County, South Carolina.

2. Plaintiff brings this complaint against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq* and 28 U.S.C. § 1346(b)(1) for money damages as compensation for the injury and death of Mr. Hunter caused by the acts of employees, servants, and agents of the United States government, working at the Wm. Jennings Bryan Dorn Department of Veterans Affairs Medical Center ("Dorn VA") in Columbia, South Carolina.

3. Venue is proper in that all, or a substantial part of the acts and omission forming the basis of this claim occurred in the District of South Carolina, Columbia Division and arose from the acts of the United States through its employees, servants, and agents acting within the

1

course and scope of their employment with Dorn VA and any other office of the U.S. government who may have provided some type of medical care to Mr. Hunter.

4. Plaintiff has fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims Act by giving formal notice in writing to the United States through the filing of a Form 95 with the Department of Veteran Affairs. Six months has passed, and the Department of Veteran Affairs has either not paid or has denied Plaintiff's claims.

## FACTUAL ALLEGATIONS

5. This action concerns the substandard medical care provided to Mr. Hunter by agents, servants, and employees of Dorn VA.

6. Mr. Hunter came under the care of providers at Dorn VA on or about October 22, 2010.

7. At that time, Mr. Hunter was 59 years old.

8. Initial Dorn VA records indicate Mr. Hunter was known to smoke at least 2 packs of cigarettes per week.

9. Dorn VA notes from November 2011 indicate Mr. Hunter's smoking increased to 3 packs of cigarettes per week, and that he had been smoking for years.

10. In May 2014, Mr. Hunter advised Dorn VA providers that he was continuing to smoke ½ pack of cigarettes per day.

11. In June 2015, Mr. Hunter advised that he had reduced his smoking to roughly 1 pack per week with the help of nicotine gum, but had not quit smoking completely.

12. However, in May 2016, Mr. Hunter advised that the nicotine gum was no longer successful and his smoking was back up to ½ pack per day.

13. On May 22, 2015, a CT scan was ordered by a GI specialist at Dorn VA for purposes of liver disease.

14. The CT report generically reported "[t]he lung bases are clear."

15. In April 2017, Mr. Hunter advised Dorn VA providers that he had still not quit smoking.

16. In July 2018, Claimant advised Dorn VA providers that he was smoking 2 packs of cigarettes per week.

17. In March 2019, Mr. Hunter advised Dorn VA providers that he was smoking ½ pack of cigarettes per day.

18. In June 2019, Mr. Hunter advised Dorn VA providers that he was smoking 2 pack of cigarettes per week.

19. In August 2019, Mr. Hunter advised Dorn VA providers that he was smoking "a couple" or 2 pack of cigarettes per week.

20. In December 2019, Mr. Hunter advised Dorn VA providers that he continued to smoke 2 pack of cigarettes per week.

21. In May 2020, Mr. Hunter presented to the Dorn VA Emergency Department with complaints of an unexplained headache.

22. In February 2022, Mr. Hunter advised Dorn VA providers that not only was he smoking 1 and ½ pack per week, but for months he had coughing with phlegm production.

23. Despite this, Dorn VA providers did not conduct any investigation into the symptoms.

24. In March 2023, it was documented by Dorn VA providers that Mr. Hunter was smoking 1 pack per week.

25. In July 2023, Mr. Hunter began complaining of progressively worsening headaches.

26. This issue continued into August and September 2023, prompting Mr. Hunter and Plaintiff to call the Dorn VA seeking an appointment with the primary care providers.

27. On September 18, 2023, Plaintiff again called seeking an appointment and was told that she should take Mr. Hunter to the nearest emergency department, which was Lexington Medical Center ("LMC").

28. Mr. Hunter presented to LMC on September 18, 2023, with a chief complaint of a headache having been on/off for three weeks and now affecting his vision.

29. An MRI of the brain revealed "Numerous enhancing similarly metastatic lesions throughout the supratentorial and infratentorial brain[.]"

30. A CT of the head revealed "Multiple bilateral intracranial masses as above most consistent with intracranial metastases."

31. A CT of the chest/abdomen revealed "Left hilar lung mass versus nodal conglomerate concerning for neoplasm versus metastatic adenopathy. Enlarged right lower paratracheal lymph node concerning for metastatic disease."

32. Biopsy specimens taken during a bronchoscopy revealed the cancer to be non-small cell carcinoma, compatible with adenocarcinoma of lung origin, involving a lymph node.

33. Neurosurgery was consulted, but surgical intervention was not recommended.

34. In October 2023, Mr. Hunter and Plaintiff received a call from personnel at Dorn VA apologizing and advising that mistakes in his care had been made.

35. Mr. Hunter and Plaintiff inquired as to what the person meant, and the person advised that because Mr. Hunter was a smoker and this was known to Dorn VA providers, lung cancer screening including low dose CT scans should have been conducted throughout his care and that this most likely would have identified the lung cancer at a much earlier stage, before it had a chance to spread to his brain.

36. On October 18, 2023, A.L. Jackson Slappy, Chief of Staff, Surgeon entered an "Institutional Disclosure of Adverse Event" note in Mr. Hunter's VA medical record.

37. As defined in VHA DIRECTIVE 1004.08 dated October 31, 2018, a "Institutional Disclosure of Adverse Event" is "sometimes referred to as administrative disclosure, [and] is a formal process by which VA medical facility leader(s), together with clinicians and others as appropriate, inform the patient or the patient's personal representative that an adverse event has occurred during the patient's care that resulted in, or is reasonably expected to result in, death or serious injury, and provide specific information about the patient's rights and recourse[.]"

38. The Institutional Disclosure of Adverse Event indicates a quality management discussion had taken place regarding the care provided to Mr. Hunter.

39. Present for the quality management discussion were Dr. Slappy, Ruth Mustard, DNP, ADPC/NS, and Rene Soler, RN, QM.

40. The Institutional Disclosure of Adverse Event states, in part, "The patient was recently diagnosed with lung cancer and brain mets in an outside ED after complaining of headaches and fatigue for several weeks. PT has > 30 pk year smoking hx and was currently smoking. noted he met criteria for annual lung cancer screening with imaging however this was not ordered. Advanced stage CA may have been avoided if detected earlier as part of a screening process."

41. As seen in the Institutional Disclosure of Adverse Event, Mr. Hunter's long history of smoking and complaints to the emergency department of headaches and fatigue were improperly ignored.

42. It was noted that he met the criteria for lung cancer screening, yet no provider initiated this screening, which most likely would have detected the cancer at a much earlier time and stage, which would have most likely provided a better prognosis and outcome.

5

43. Despite being continuously advised that Mr. Hunter smoked approximately 2 packs of cigarettes per week, if not more, medical providers of the Dorn VA failed to conduct standard of care, routine, low-dose CT scans to monitor for signs and symptoms of lung cancer.

44. After the diagnosis, Mr. Hunter underwent radiation therapy, immunotherapy, and chemotherapy, but his cancer was later found to have further metastasized to his right femur.

45. Mr. Hunter passed away on September 4, 2024.

46. Mr. Hunter's Death Certificate lists his causes of death as: (1) Hospice Comfort Care; (2) End-Stage Lung Cancer; (3) Lung Cancer Metastatic to the Brain; and (4) Acute Kidney Injury.

47. Plaintiff was appointed as the Personal Representative of Mr. Hunter's Estate on November 25, 2024, by Order of the Lexington County Probate Court.

48. As a direct and proximate result of the negligence, carelessness, gross negligence, and recklessness of the agents and employees of the Dorn VA, Richard Hunter suffered from severe injuries, needless pain, mental and emotional distress, loss of enjoyment of life, reduced life expectancy, permanent disability and, ultimately, death.

49. Mr. Hunter is entitled to compensation for his pain and suffering, loss of enjoyment of life, medical expenses incurred, and all other damages available under a Survival Action.

50. The statutory beneficiaries of Mr. Hunter's Estate have suffered from his wrongful death, including but not limited to the loss of his companionship, wisdom, and guidance, and all other damages available under a Wrongful Death Action.

51. Attached hereto as **Exhibit 1** is the affidavit of a qualified expert who will testify to one or more deviations from the applicable standard of care.

**FOR A FIRST CAUSE OF ACTION**

**(SURVIVAL)**

52. Plaintiff incorporates and references all above paragraphs as if set forth verbatim herein.

53. Defendant United States of America through agents and/or employees undertook the duty to render medical care to Mr. Hunter in accordance with the prevailing and acceptable professional standards of care in the national community.

54. Defendant was negligent, careless, grossly negligent, reckless and in violation of the duties owed to Mr. Hunter and is liable for one or more of the following acts of omission or commission, any or all of which are departures from the prevailing and acceptable professional standards of care:

   a. In failing to perform proper screening and counseling for lung cancer;

   b. In failing to order or otherwise ensure Mr. Hunter underwent appropriate early detection radiology studies, given history, presentation, and symptoms; and

   c. In such other ways as may be identified through discovery and proven at the trial of this case.

55. As a result of Defendant's conduct, Mr. Hunter suffered severe debilitating injuries which resulted in his permanent injury and disability, conscious pain and suffering, and death as a result of which his estate is entitled to recover a sum to compensate his estate for his conscious pain and suffering, medical expenses, mental anguish, funeral expenses, loss of earnings capacity, loss of enjoyment of life, and other damages.

**FOR A SECOND CAUSE OF ACTION**
**(WRONGFUL DEATH)**

56. Plaintiff incorporates and references all above paragraphs as if set forth verbatim herein.

57. Defendant United States of America through agents and/or employees undertook the duty to render medical care to Mr. Hunter in accordance with the prevailing and acceptable professional standards of care in the national community.

58. Notwithstanding this undertaking and while Mr. Hunter was under the care of Defendant United States of America, Defendant departed from prevailing and acceptable professional standards of care and treatment, was negligent, careless, grossly negligent, reckless and in violation of the duties owed to Mr. Hunter, and is liable for one or more of the following acts of omission or commission, any or all of which are departures from the prevailing and acceptable professional standards of care:

   a. In failing to perform proper screening and counseling for lung cancer;

   b. In failing to order or otherwise ensure Mr. Hunter underwent appropriate early detection radiology studies, given history, presentation, and symptoms; and

   c. In such other ways as may be identified through discovery and proven at the trial of this case.

59. As a result of Defendant's negligence, recklessness and departure from the professional standards of care as noted above, Mr. Hunter suffered severe debilitating injuries which resulted in his death, and thus Defendant's negligence was the proximate or contributing cause of the loss of the support, aid, society, comfort, and companionship of his heirs at law. Mr. Hunter's beneficiaries are therefore entitled to recover from Defendant a sum of money to compensate them for the medical expenses, funeral expenses, mental anguish, and loss of Mr. Hunter's aid, society, comfort, and companionship.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant for actual damages, special damages, and consequential damages in an amount to be determined by the court at the trial of this action, for the costs and disbursements of this action and for such other and further relief as this court deems just and proper.

                            MCGOWAN, HOOD, FELDER & PHILLIPS, LLC

                            By: s/ *Zachary B. Hayden*
                                 John G. Felder, Jr.
                                 Federal Bar No.: 6441
                                 Zachary B. Hayden
                                 Federal Bar. No.: 12932
                                 1517 Hampton Street
                                 Columbia, South Carolina 29201
                                 Phone: (803) 779-0100
                                 jfelder@mcgowanhood.com
                                 zhayden@mcgowanhood.com
                                 *Attorneys for Plaintiff*

July 10, 2025